Next case on the calendar this morning is Rosenblatt v. Coutts & Company. Thank you. Mr. Taylor. Thank you, Your Honor. May it please the Court, my name is Zachary Taylor and I represent the plaintiff appellant in this case, Mr. Marvin Rosenblatt. The Court below erred when it held that long-arm jurisdiction could not be asserted over the defendant Coutts & Company AG under NYCPLR 302A1. The District Court based its decision in part on the conclusion that the, quote, center of gravity, end quote, of the business transaction between Mr. Rosenblatt and Coutts was in Switzerland and not in New York. Now, that center of gravity language shows up a great deal in Southern District decisions. However, it doesn't have any forebear in New York State or Court of Appeals decisions, New York State Court of Appeals decisions. Indeed, it's a complete misapplication of the standard that has been established by the Court of Appeals. But what about the constitutional limitations on impersonum jurisdiction? Those are absolutely applicable, Your Honor. That's a separate inquiry from the center of gravity, and that is, that's a question of fundamental fairness, whether it's foreseeable to be hailed into a New York court. And well, isn't it a question of whether the party that is being brought into court purposely sought to avail itself of the privilege of doing business in New York? I completely agree, Your Honor. What did the bank do that satisfied that standard? So it's important, Your Honor, to keep in mind that there are two claims in this case, and they both arise out of the same nucleus of operative facts. So what we have here is not a plain vanilla lender-borrower relationship. Rather, what we have is a decades-long business relationship between Coutts and Mr. Rosenblatt, in which Coutts projected itself into New York in many ways. First of all, it entered into three contracts with Mr. Rosenblatt. And they knew that they were transacting with someone in New York, because they put his New York address on the front page of the contract. There were new- Mr. Rosenblatt had a, or owned property in Switzerland, isn't that correct? And had a Swiss address as well, isn't that correct? He did own property, and to be fair, the mortgage agreement concerned that property in Switzerland. And had a choice of law and jurisdictional provisions pointing to Switzerland in both cases, right? As a choice of law provision for Swiss law, however, we dispute that there was exclusive jurisdiction in Zurich. Nonetheless, that was the jurisdiction that was identified as governing, right? Well, with all due respect, I would say that there were two jurisdictions identified. If you look at the general conditions of the mortgage loan, it says that the bank reserves the right to bring an action against Mr. Rosenblatt in the jurisdiction of his domicile. And his domicile is identified expressly in the contract, and that would be New York. Well, wait, wait, wait, wait, wait, wait, wait, wait. His address is listed as being in New York. There is not a provision that says they have a right to sue him in his domicile, which is New York. They have a right to pursue him in his domicile. I take it if he moved to Florida during the course of this transaction and made that a permanent move, such that his domicile changed to Florida, under this contract, Kutz could have sued him in Florida, but at that point, not in New York. Isn't that correct? Well, Your Honor, I mean, I would say that his domicile is identified as New York in the contract. Well, first of all, does the word domicile link to New York anywhere? Well, the client is a defined term, and under client, it lists his New York address. That's where he happens to live, right? Yes, and that's where he lived throughout the- His domicile, which is a term, of course, a domicile can shift and change. People move. It absolutely can. And they move permanently. What we do have here, though, is a 20 plus year relationship during the entirety of which Mr. Rosenblatt lived in New York. And his address, his New York address, is identified in more than one contract. In other words, in the 2010 and 2012 MLA. I want to follow up on Judge Lynch's question, which is the agreement, it's at A30, which talks about the domicile, that he can be sued in his domicile. How can you read that to say that Coutts could be sued at his domicile, whether it's in New York or Florida or somewhere else, it's pretty clear. It's just talking about Coutts being able to sue him at his domicile. It doesn't say, and we can sue Coutts wherever our client's domicile is. How do you read that into that language? That is correct, Your Honor. I'm not reading that into that language. Obviously, if the contract provided that Mr. Rosenblatt could, expressly provided that Mr. Rosenblatt could sue Coutts in New York, we wouldn't be here today. What I'm saying is that Coutts purposely availed itself of the benefits of the legal system in New York by including that language within the contract. Suppose the contract were totally silent. Wouldn't it always be the case that Coutts could sue Mr. Rosenblatt in his domicile? That they would always be able to find in personam jurisdiction over him, wherever he was, right? I mean, that's not a big, that's not a specification of something that would not otherwise be true. That is true, Your Honor, but this is something that Coutts decided to expressly include within the contract. In other words, they were stating that they could reach into New York. So then it would follow that if he did move to Florida, he could sue them in Florida under the same logic? Yes, that is true, Your Honor. Despite the fact that they would have no way of expecting that he would move to Florida or any other place. Exactly. I mean, there was no reason for them to expect him to move to Florida because he was a lifelong New York resident and over the course of 20 years. How does that amount to a deliberate availing of the privileges of doing business in a location where you just follow the client wherever he moves? Why is that deliberate on Coutts' part? Well, it's deliberate in the sense, Your Honor, that they were, first of all, reaching into New York when they were communicating with Mr. Rosenblatt via email and telephone, as well as more antique arts, such as sending mail by the post. They never visited him here, did they? No, they never physically visit him in New York. However, there are ample New York Court of Appeals cases which make clear that physical presence in the modern world of global communications within New York is not necessary. I take it that the relationship begins in Switzerland, right? This is a joke that begins, guy walks into a bank in Zurich, right? Well, in fact, Your Honor, while this is not something that's in the complaint, the relationship did not begin in Switzerland. The relationship began not in New York, it began in England. But Mr. Rosenblatt, as a resident of New York, was largely in New York throughout that relationship and while those communications between himself and the bank occurred. If I choose to get a loan from a bank in London or in Switzerland, I get on a plane, I go there, I talk to the people there. I put up as security property, not in New York, but in Switzerland, and make an agreement and receive a somewhat mushy-sounding, but that goes to the merits, not to jurisdiction, promise that they'll help me with my foundation, which is going to be based at this property in Switzerland. What did they do to, just relying on the fact that they know, I came there from New York. Well, that's not what transpired, Your Honor. And that's why I say it's important to look at this not as a plain, vanilla lender-borrower relationship. Rather, this was a relationship that was initially initiated by Coots, and those discussions concerning the foundation, and it's a New York-based foundation between Coots and Mr. Rosenblatt. The purpose of this was for Coots to have access to other potential clients. They saw this as a way of burnishing their brand and reaching other clients, not necessarily in Switzerland, all over the world, including New York. Why do you say it was New York-based? The only New York-based I saw was the three directors were family members in New York. But GIHS, G-I-H-H, was located and always would be located in Switzerland at their home, right? Well, Your Honor, it does say in the incorporating documents that they are looking forward to establishing something in Saanen. But per force, the organization was based in New York because that's where the directors, and more importantly, where Mr. Rosenblatt was located, and that's where he was doing his work. He was hiring attorneys in New York. He was doing the work that was necessary to set up the foundation in New York. Where was the foundation going to be located once it was set up? Well, ultimately, it would be located in this house that was being developed in Switzerland, but it was not at the time of any of the discussions or anything that's relevant to the complaint. In those conversations about the foundation, and you're saying Coots approached Mr. Rosenblatt, occurred where? Coots approached Mr. Rosenblatt initially in London. And then they've continued virtually as well as in person in Switzerland and other places. That's correct, Your Honor. Okay, thank you very much. You have two, go ahead. The G, the name of the foundation, the G does not stand for Governor's Island. No, Your Honor, it stands for Gestat. Gestat is effectively a brand. It's a very important global brand which would make this foundation successful. But it was a location though, isn't it? Of course it's a location, just as Davos is a location, Gestat is a location. And to certain people, this has great currency. Very good. You have two minutes for rebuttal, and we'll hear from Mr. Morrison. Thank you, Your Honor. May it please the court. Ross Morrison, Buckley Sandler for Appellee Coots and Co AG. The court should affirm the judgment of the district court, because personal jurisdiction does not exist over Coots in New York. As the district court correctly held, and as many of your Honor's questions have alluded to, Coots did not perform any purposeful acts in New York in relation to plaintiff's breach of contract and promissory estoppel claims as required by the New York long arm statute, New York CPLR 302A1. The contract that issued here was a mortgage loan. It was originated and executed by the parties in Switzerland. Swiss law applied to the loan, plaintiff's Swiss property secured the loan. The exclusive place of jurisdiction was Zurich for disputes arising under the agreement. Coots' employees located in Switzerland serviced the loan and sent plaintiff notices under loan including the notices the plaintiff attached to the contract, to the complaint in the case. From their offices in Switzerland to the plaintiff at the property in Switzerland. And in fact sent the termination notice of the mortgage from their Swiss offices to plaintiff's property. It is true though, as your adversary said, that they continue to conduct a fairly extensive relationship with Mr. Rosenblatt over years and years and years, corresponding with him in New York. Is that right? The record evidence on that, Your Honor, is that there were two prior mortgage agreements, both secured by the Swiss property. So I'm not sure what that has to do with New York. Those agreements also are irrelevant to the breach of contract. And your adversary says also that Coots approached Mr. Rosenblatt initially to establish the relationship. Is that also- That is the allegation that occurred in London, which also has nothing to do with New York. I also think that that approach would be irrelevant to the plaintiff's precise claims in this case, which are breach of contract and promissory estoppel claims concerning the 2012 mortgage agreement, which, as I've just elucidated, has really no connection at all to New York and has really only connected to Switzerland. Has Coots ever had a branch office in New York? I don't believe so. Does the record reflect that? I don't believe so. Okay, thank you. How about the transfer of funds to the JPMorgan Chase account? Weren't there a substantial number of funds transferred? There's an allegation of transfers of mortgage funds or securities purchased with those funds, Your Honor. The precise facts in the record are that Coots dispersed the mortgage loan funds to plaintiff into plaintiff's Coots' account in Switzerland. Plaintiff subsequently directed the transfer of some of those funds to New York accounts. I believe at some point, securities were purchased to those accounts and then Coots couldn't hold the US securities in a Swiss account, so plaintiff directed the securities to be transferred to his accounts at JPMorgan. So those facts really have very little connection to New York other than the fact that funds were transferred and the securities may have been transferred there. I think it's a well established legal principle that merely sending funds or assets derived from loan funds into New York is not a sufficient connection to establish personal jurisdiction over Coots. Coots didn't do anything to avail itself of taking advantage of the laws of New York in that case. It simply acted at the behest of its client. Plaintiff's various attempts to establish jurisdiction in this case, some of which have come up already or really can be rejected fairly quickly here. The fact that plaintiff is a New York resident or that the other directors of the Gestad Institute located in Switzerland or New York residents is simply not enough to establish that defendant availed itself of the privilege of conducting business in New York. The fact that sent a loan related correspondence, may have sent a loan related correspondence to plaintiff in New York or called them there during the course of negotiations of the agreement also is not sufficient, especially where Coots, there's no allegation that Coots ever met with plaintiff in New York, either before the execution of the agreement or during the pendency of the agreement. The forum selection clause, as your honors questions have indicated, is very clear. That clause provides exclusive jurisdiction is in Zurich, Switzerland. There's a narrow exception that allows Coots, not plaintiff, to sue plaintiff in plaintiff's domicile, wherever that may be. Whether that's Florida or New York, wherever a plaintiff would choose to reside. That, of course, does not expressly subject, that clause does not indicate Coots invoked the jurisdiction of the New York courts. By having that clause, all it indicates is that Coots reserved itself the right to sue plaintiff wherever he might live. Focusing just on the plaintiff's residence would be essentially turning the jurisdiction analysis on its head, which focuses on the defendant's conduct and not the activities of plaintiff. Unless your honors have any other questions, we're prepared to rest on our brief. Very good, thank you very much. Mr. Taylor, you have two minutes rebuttal. Thank you, your honor. I first want to address the contention by Mr. Morrison that Coots did not conduct any purposeful activities in New York. And I'd like to draw the court's attention back to those financial transactions that you were asking Mr. Morrison about in order to clear up the record. Under Mr. Rosenblatt's allegations, it is not Mr. Rosenblatt that directed that the money be transferred into New York. Rather, this was something that Coots did on its initiative for its own reasons. And specifically, I would like to draw the court's attention to section 11, which are special conditions in the 2012 mortgage loan agreement that appears in 825 of the appendix. There it states that a blocked account consisting of 500,000 Swiss francs, which at the time was somewhat less than $500,000, must be maintained for the lifetime of the mortgage. At a certain point, as Mr. Rosenblatt states in his declaration in 2013, the bank informed him that it was not allowed, or at least had misgivings about maintaining this account, which included securities, because of its worry about being subject to SEC regulations. And so it said, we're going to have to transfer these funds to you in New York. And that's then what they did. And that transfer is reflected in page 94 of the appendix. And it's also discussed in the declaration. It says we're going to have to transfer this to you in New York? Well, it was clear throughout that Mr. Rosenblatt was in New York and was going to be transferred. He could, I mean, presumably he could, I thought the point was they couldn't keep it in Switzerland. If he directed them to send it to Azerbaijan or California or an account wherever he wanted it to go, would that have, somehow, I mean, Kutz said this has to go to New York? Well, I don't think the question was that they couldn't maintain the account in Switzerland. There is a footnote, and I understand that this is not part of the record, but there were accounts that were opened by Kutz with Mr. Rosenblatt as a beneficiary within New York so that these securities could be bought and sold. This is what they're getting rid of. They're saying to Mr. Rosenblatt, you have to basically take control over this stuff, because we're not a registered broker dealer in New York. And so, obviously, it's not going to Azerbaijan, because Mr. Rosenblatt lives in New York. All right. Very good. Thank you, Your Honor. Thank you. We will reserve decision.